UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUNG LEE, et al.,<br><br>   Plaintiffs,<br> v.<br>AMGUARD INSURANCE COMPANY, et al.,<br><br>   Defendants. | Case No.   20-cv-00210-EJD<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND OF PROCEEDINGS TO STATE COURT**<br><br>Re: Dkt. No. 26 |

Plaintiffs Fuji Sushi, a California Corporation, and business owners Jung Lee and Young Lee ("Plaintiffs") bring this suit against Defendant Amguard Insurance Company ("Amguard") seeking payment of insurance benefits under a fire insurance policy issued by Amguard. Presently before the Court is Plaintiffs' Motion for Leave to File and Serve First Amended Complaint and for Remand of These Proceedings to State Court ("Mot."). Dkt. No. 26. Having considered the parties' briefing, the relevant law, and the record in this case, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion.

**I.**  **BACKGROUND**

  **A.**  **The Original Complaint**

    **1.**  **Fuji Sushi Restaurant**

Plaintiffs own a sushi restaurant and business called "Fuji Sushi." Verified Compl. for Breach of Insurance Contract; Insurance Bad Faith ("Compl."), Dkt. No. 1-1 ¶ 7. The restaurant is located on the ground floor of a building in downtown San Jose (the "Premises") that Plaintiffs

first leased from Timothy and Sandra Gill (the "Landlord") in 2007. Compl. ¶ 7. In 2012, Plaintiffs and the Landlord entered a new lease agreement (the "Lease") for the continuation of the business which provides, in part, that if the Premises are totally or partially damaged by a fire through no fault of the Plaintiffs, then the Landlord shall have the right to restore the premises by repairing or rebuilding. *Id.* ¶¶ 7-8.

### 2. The Insurance Policy

On or about February 27, 2018, Plaintiffs purchased a Business Owners Insurance Policy issued by Defendant Amguard (the "Insurance Policy") for the period of April 3, 2018 to April 3, 2019. *Id.* ¶¶ 10-11. The Insurance Policy provides coverage for, among other things, Business Income Loss in the amount of "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" Compl. Ex. B ("Business Income Loss Coverage") at 20. The loss of Business Income must be sustained "during the period of restoration and … within 12 consecutive months after the date of direct physical loss or damage. *Id.* at 21. The Policy also provides coverage for Extra Expenses incurred "(a) to avoid or minimize the suspension of business and to continue 'operations' [or] (b) to minimize the suspension of business if you cannot continue operations." Compl. Ex. C ("Extra Expense Coverage") at 24. These expenses must also occur "during the period of restoration" and "within 12 months of the direct physical loss or damage." *Id*. The Insurance Policy defines the "period of restoration" as the period of time that "ends on the earlier of (a) the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality or (b) the date when the new business is resumed." Compl. Ex. D ("Definitions") at 26.

### 3. The Fire and Plaintiffs' Losses

On February 5, 2019, a fire started at the building through no fault of Plaintiffs (the "Fire"), which damaged all portions of the Premises and made it unsuitable for conducting restaurant operations. *Id.* ¶¶ 12-14. As a result, Plaintiffs were forced to stop conducting business on the day of the fire and have been unable to resume operations since because the Premises have

1  not been repaired. Compl. ¶ 14. Plaintiffs allege that the fire has caused them to suffer Business
2  Income Losses, which have accrued at a rate of $37,002.20 per month and have continued
3  unabated since February 5, 2019. *Id*. ¶ 16. Plaintiffs believe their business income losses over the
4  course of the year will total at least $444,030. *Id*. ¶ 17. Amguard made one payment of $148,010
5  to cover Plaintiffs' Business Income Losses from February 5, 2019 to June 4, 2019. *Id*. ¶ 21.
6  Since then, Amguard has not made any further payments for Business Income Loss or for Extra
7  Expenses, because they contend that the period of restoration has ended. *Id*. ¶ 22.

### 4. Procedural History

Plaintiffs filed a Verified Complaint for Breach of Insurance Contract; Insurance Bad Faith on December 11, 2019 in Santa Clara County Superior Court, alleging two causes of action: first, that Amguard breached its contract with Plaintiffs by discontinuing payment of Business Income Losses and Extra Expenses (*id.* ¶ 28); and second, that Amguard breached its duty of good faith and fair dealing by contending that the period of restoration had ended and by refusing to provide any data, analysis, or reports that Amguard relied upon to support this contention. *Id*. ¶ 37. In their Complaint, Plaintiffs requested damages of at least $292,020 ($444,030 total anticipated Business Income Losses less $148,010) in addition to exemplary and punitive damages. *Id*. at 8. On January 10, 2020, Amguard properly removed the case to this Court based on diversity jurisdiction. *See generally* Def. Amguard Insurance Company's Notice of Removal to Federal Court ("Notice of Removal"), Dkt. No. 1-3. The parties have conducted discovery in the form of document requests, requests for admissions and interrogatories. Mot. at 2. Plaintiffs filed this Motion for leave to file their first amended complaint on March 12, 2021. *See generally* Mot.

### B. The Proposed Amended Complaint

Plaintiffs now seek leave to amend and to supplement their Complaint (1) to add new allegations and claims against Amguard based on (a) events that occurred before the filing of the Complaint but were learned during discovery and (b) events that occurred after the filing of the Complaint and (2) to add claims for breach of contract and professional negligence against a new

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE
FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND
3

defendant, Altamont Insurance Brokers, Inc. ("Altamont"). Mem. of P. & A. in Supp. of Mot. ("Mem. of P. & A."), Dkt. No. 26-1 at 3. Plaintiffs also allege that the Fire has caused them to incur various losses, including: property damage exceeding $150,000, loss of business income amounting to $444,030 in the 12 months after the Fire and that have continued since, and various related losses and expenses totaling $24,000 to date. Am. and Suppl. Compl. for Breach of Contract; Negligence; Insurance Bad Faith ("Am. Compl."), Dkt. No. 26-4, ¶¶ 22a-c.

### 1. New Allegations Against Defendant Amguard

In the Factual Background section of the proposed Amended Complaint, Plaintiffs have explained additional details regarding Amguard's alleged failure to pay benefits due under the Policy. Notably, Plaintiffs allege that Amguard failed to conduct a full investigation into the cause of the Fire. *Id.* ¶ 14. Further, Plaintiffs allege that Amguard and the Landlord's insurance carrier ("Hartford") disagreed over their respective obligations to pay damages resulting from the Fire, which caused or contributed to delays in the restoration of the Premises and building. *Id.* ¶ 19. As of March 10, 2021, Plaintiffs still have not resumed restaurant operations because the Premises have not been restored. *Id.* ¶ 20.

#### a. Plaintiffs' Additional Allegations in Support of Their Breach of Insurance Policy Claim Against Amguard

In the original Complaint, Plaintiffs alleged that Amguard breached the insurance policy contract by refusing to pay benefits under the Insurance Policy (including Business Income Losses), and by asserting that the period of restoration had ended. Compl. ¶¶ 28-30. In the proposed Amended Complaint, Plaintiffs add several new allegations to support this claim. Plaintiffs allege that Amguard further breached the Insurance Policy by: violating California Insurance Code Section 2071 by failing to notify Plaintiffs that they could obtain, upon request, copies of claim related documents (Am. Compl. ¶ 31a); violating California Code of Regulations, Title 10, Section 2695 by failing to disclose to Plaintiffs all benefits, coverages, time limits, and other provisions of the Policy that may have applied to Plaintiffs' claims (*id.* ¶ 31b); violating

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND
4

California Code of Regulations, Title 10, Section 2695 by failing to communicate to Plaintiffs that additional benefits might reasonably be payable under the Policy and failing to cooperate with and assist Plaintiffs in determining the extent of Amguard's additional liability (Am. Compl. ¶ 31c); denying or failing to pay Property Damage benefits under the Policy (*id.* ¶ 31d); denying or failing to pay all of Plaintiffs' rights under the Policy for various coverages, including debris removal, restaurant coverages and valuable records and papers coverages (*id.* ¶ 31f); failing to pay for certain expenses, including $1,000 paid to Lotus, Inc., storage charges due to Servepro Inc., and storage charges due to CRDN (*id.* ¶ 31g); and asserting that Business Income Losses are not payable for delays in construction (*id.* ¶ 31h).

### b. Plaintiffs' Additional Allegations in Support of Their Insurance Bad Faith Claim Against Amguard

In the original Complaint, Plaintiffs' insurance bad faith claim was predicated on allegations that Amguard unreasonably and without justification contended that the period of restoration had ended and refused to provide any data, analysis or reports to support that contention. Compl. ¶ 37a-c. In the proposed Amended Complaint, Plaintiffs add numerous new allegations to support this claim. Plaintiffs allege that Amguard: failed to pay, withheld payment, or delayed payment of Policy benefits and coverages (Am. Compl. ¶¶ 47d, 47g); threatened to decline coverage unless documents were provided which Amguard knew had been destroyed (*id.* ¶ 47h); falsely asserted that the Policy excludes coverage for delays in construction (*id.* ¶ 47f); failed to make a thorough and prompt investigation of Plaintiffs' claims and ignored the reports of its own investigator (*id*. ¶ 47a); attempted to settle claims with unreasonably low offers (*id.* ¶ 47c); provided Plaintiffs with unduly restrictive claim forms (*id*.); failed to communicate adequately with Plaintiffs (*id.*); and failed to evaluate Plaintiffs' claims objectively (*id.* ¶¶ 47b, 47j). As a result of Amguard's alleged breaches of the Insurance Policy and breaches of the implied covenant

of good faith and fair dealing, Plaintiffs believe that their damages amount to at least $392,000.[1] Am. Compl. ¶ 34.

### 2. Allegations Against Proposed Defendant Altamont

Plaintiffs allege in the proposed Amended Complaint that in February 2018 Altamont agreed, among other things, to act as an insurance broker in procuring insurance for Plaintiffs' business, including coverages required by the Lease ("Insurance Broker Contract"). *Id.* ¶ 8. The Lease between the Plaintiffs and the Landlord required Plaintiffs to procure insurance in certain amounts and to name the Landlord as an additional insured. *Id.* ¶ 6. Altamont allegedly represented that Amguard's policy would protect their business in the event of a fire; specifically, that the policy would cover Business Income Losses resulting from a fire for *at least* a year.[2] *Id.* ¶ 9 (emphasis added). Plaintiffs allegedly relied on this representation when they agreed to purchase Amguard's Insurance Policy. *Id.* ¶ 10. The Insurance Policy does not name the Landlord as an additional insured. *Id.* ¶ 12. Based on the foregoing, Plaintiffs assert claims for breach of the Insurance Broker Contract and negligence against Altamont and seek at least $296,000 in damages.[3] *Id.* ¶¶ 40, 44.

## II. LEGAL STANDARD

### A. Schedule Modification Under Federal Rule of Civil Procedure 16(b)(4)

When a court's deadline for amendments to pleadings has passed (as it did in this case on June 5, 2020) and a plaintiff seeks leave to amend a complaint or add supplemental pleadings,

---

[1] This amount is $100,000 more than what was claimed in the original Complaint. Compl. at 8.

[2] The language "*at least* a year" is used in the Amended Complaint (Am. Compl. ¶ 9), but is inconsistent with the language in the Plaintiffs' Reply brief and in Mr. Shea's Declaration which both state that "Altamont told the Plaintiffs they would be covered for ***up to (or at least)*** one year." Reply Mem. of P. & A. in Supp. of Mot. ("Reply iso Mot."), Dkt. No. 29 at 2 (emphasis added); Reply Decl. of Marc L. Shea in Supp. of Mot. ("Decl. iso Mot."), Dkt. No. 29-1 ¶ 9 (emphasis added).

[3] Plaintiffs do not explain how they reached the damages estimate of $296,000 against Altamont. It is also unclear how these damages differ, if at all, from the $292,000 in damages Plaintiffs seek from Amguard for Business Income Losses.

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND

6

Federal Rule of Civil Procedure 16(b)(4) applies. Fed. R. Civ. P 16(b)(4). Rule 16(b)(4) states that: "[a] schedule may be modified only for **good cause** and with the judge's consent." *Id*. (emphasis added). Courts have yet to provide a standard formula for determining whether "good cause" to modify the schedule exists, but previous courts have found that considerations of (1) the diligence of the party seeking modification (*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)), (2) judicial efficiency (*Norton v. LVNV Funding, LLC*, 2020 WL 2557003, at *3 (N.D. Cal. May 19, 2020)) and (3) prejudice to the opposing party (*Johnson*, 975 F.2d. at 609) may be considered.

### 1. Diligence of the Party Seeking Modification

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment," and "if the moving party was not diligent, the inquiry should end." *Id*. It is appropriate for the court to modify the pretrial schedule "if [the deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Id*. A party seeking to modify the schedule generally cannot demonstrate good cause where they knew of the facts and theories underlying the amendment at the inception of the action but delayed in requesting amendment, because such conduct is not in keeping with the requirement of diligence. *See e.g. In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013); *see also Neidermeyer v. Caldwell*, 718 F. App'x 485, 488–89 (9th Cir. 2017).

### 2. Judicial Efficiency

Additionally, "the purpose of Rule 16(b) is to facilitate efficient case management." *Norton,* 2020 WL 2557003, at *3; *see e.g. C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1197–98 (C.D. Cal. 2009), *aff'd sub nom. C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011). Consistent with this purpose, several courts have allowed modification to the schedule after concluding that no foreseeable case management issues would

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND
7

arise as a result. *Norton*, 2020 WL 2557003, at *3 (granting modification where the moving party filed just over a month after discovering an error and well within the discovery and dispositive motion deadlines); *Capistrano*, 656 F. Supp. 2d at 1197–98 (granting modification for amendments where the moving party's additional defense would not result in the need for additional discovery or cause case management issues); *compare Johnson*, 975 F.2d at 610 (denying modification, in part, because it would "disrupt the agreed upon course of litigation," a situation that Rule 16 was drafted to prevent).

### 3. Prejudice to the Defendant

Finally, the court may consider the degree of prejudice to the party opposing the modification, but the court's main focus is on the moving party's diligence and reasons for seeking modification. *Johnson*, 975 F.2d. at 609.

### B. Supplemental Pleadings and Amendments Under Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). In essence, Rule 15(d) "enabl[es] a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Thus, judicial efficiency is the court's focus in deciding whether to permit a supplemental pleading. *See Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

### C. Joinder Under Title 28 U.S. § 1447(e)

If after the case has been removed to federal court, a plaintiff wishes to add a defendant that will destroy diversity and the court's subject matter jurisdiction, the proper standard to apply is the discretionary joinder standard set forth in Title 28 United States Code Section 1447(e). *Santa Clara Valley Water Dist. v. CH2M Hill, Inc.*, 2020 WL 4252677, at *3 (N.D. Cal. July 24,

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND

8

2020); *see also Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1088 (C.D. Cal. 1999) ("a diversity-destroying amendment must be considered under the standard set by § 1447(e)"). Section 1447(e) provides that, if "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). When a party seeks to join diversity-destroying defendants, courts generally look at six factors:

> (1) whether the party sought to be joined is needed for just adjudication and would be joined under Rule 19(a) of the Federal Rules of Civil Procedure; (2) whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder; (3) whether there has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; (5) whether the claim against the new party seems valid; and (6) whether the plaintiff will be prejudiced by denial or joinder.

*Bakshi v. Bayer Healthcare, LLC*, 2007 WL 1232049, at *2 (N.D. Cal. Apr. 26, 2007) (omitting internal citations). As to the first factor, under Federal Rule of Civil Procedure 19, a necessary party is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *CP Nat'l. Corp. v. Bonneville Power Admin.,* 928 F.2d 905, 912 (9th Cir. 1991). If failure to add the party will result in separate and redundant actions, the standard is met. *See id.* at 910. Although courts consider the Rule 19 standard, joinder under § 1447(e) is a less stringent standard: "Courts disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." *See, e.g., Red Buttons v. National Broadcasting Co.,* 858 F. Supp. 1025, 1027 (C.D. Cal. 1994) (disallowing amendment of non-diverse defendants who were not involved with the production alleged to be defamatory). This is the proper standard because "[o]nce a case has been removed, a diversity-destroying amendment could be motivated by the plaintiff's desire to gain procedural advantage by returning to state court," and "a district court must scrutinize a proposed diversity-destroying amendment to ensure that it is proper; in

1  other words, 28 U.S.C. § 1447(e) applies and the logic and policy of Rule 15(a) do not apply."

2  *Bakshi*, 2007 WL 1232049, at *2 (omitting internal citations). If the court finds that joinder of the

3  non-diverse party is appropriate and diversity is the sole basis for the court's jurisdiction, the court

4  will lose subject matter jurisdiction and the action must be remanded to state court. *Morris v.*

5  *Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001). Alternatively, if the court denies

6  joinder, the matter will remain in federal court.

## III.  DISCUSSION

### A.  New Allegations Against Amguard

Amguard essentially argues that Plaintiffs were not diligent in filing this Motion because Plaintiffs knew or should have known the basis for all of the new allegations against Amguard at the time they filed their original Complaint. Opp'n. of Def. to Mot. ("Opp'n"), Dkt. No. 28 at 8. In response, Plaintiffs argue that they were diligent in bringing the motion. Plaintiffs explain that the additional coverage disputes "were not identified in the original complaint because Plaintiffs did not know Amguard had denied coverage or would deny coverage (or fail to pay benefits)" and, further, "Plaintiffs identified all of those disputes during discovery and/or learned of them as a result of the passage of time without payment of the claims." Reply iso Mot. at 9. Further, Plaintiffs also argue that there is "good cause" to allow the amendments because the case was delayed by COVID-19 and stay at home restrictions. *Id.*

The Court accepts Plaintiffs' representation that it was not until their counsel received and reviewed discovery from Amguard that they learned of the additional bases for their claims. Amguard produced the first batch of discovery documents in June of 2020, and therefore it was not feasible for Plaintiff to have met the June 5, 2020 deadline for amending the pleadings. In the following months, Amguard produced roughly 3,800 pages of discovery. Decl. iso Mot. ¶ 7. The last of the documents were produced in December 2020. *Id*. Plaintiffs' counsel attests that it took him "several days (spread out over several months) to review those document productions" and, further, his ability to meet with and discuss this case with his clients was hampered during much

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND

10

1   of 2020 due to COVID-19. *Id.* ¶¶ 7-8. Plaintiffs filed the instant motion in March of 2021, three

2   months after the last wave of document production. Under the circumstances, and especially in

3   light of the challenges caused by the pandemic, the Court finds Plaintiffs were diligent.

4       Amguard argues that it would be unduly prejudiced if the amendments were allowed

5   because it would be forced to restart discovery. Opp'n at 9. The Court disagrees. As Plaintiffs

6   noted, their proposed amendments do not completely redefine their claims; they only add detail

7   and expand on the existing claims. Reply iso Mot. ¶ 10. Additionally, the Court recently

8   approved the parties' stipulation to modify the pretrial schedule, which extended the discovery

9   deadline to October 23, 2021. Stipulation to Modify Case Management Order to Continue

10  Litigation Deadlines ("5/25 Stipulation"), Dkt. No. 32 at 2-3. Given the limited scope of the

11  proposed amendments and supplementation, and the extension of the discovery cut-off, allowing

12  the proposed amendments and supplementation will not be unduly prejudicial. *Cf. Witkin v.*

13  *Lotersztain*, 770 F. App'x 883, 884 (9th Cir. 2019) ("the district court did not abuse its discretion

14  by denying Plaintiff's motion for leave to amend his complaint after the close of discovery

15  because granting leave to amend would have caused undue delay and prejudice to defendants");

16  *also cf. Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (holding that the court did

17  not abuse its discretion by denying plaintiff's motion for leave to amend his complaint after the

18  close of discovery because the new claims advanced different legal theories, required proof of

19  different facts, and would have required relitigating a related state court action). For the

20  aforementioned reasons, Plaintiffs were diligent in bringing the new allegations against Amguard

21  and no significant considerations weigh against allowing the proposed amendments. Plaintiffs'

22  motion for leave to amend the claims against Amguard is GRANTED.

23      **B.**    **Proposed New Defendant Altamont.**

24      In regards to proposed new defendant Altamont, counsel for Plaintiffs represent that he did

25  not learn of the interaction between Plaintiffs and Altamont until "sometime during 2020." Decl.

26  iso Mot. ¶ 9. Counsel also states that he did not form the opinion that his clients had viable claims

27  Case No.: 20-cv-00210-EJD
28  ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE
    FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND

11

against Altamont until February 2021, after he conducted further investigation and analysis. Decl. iso Mot. ¶ 9. Counsel further declares that he began preparing this Motion soon after he formed this opinion in February 2021 (*id.* ¶ 11) and the Motion was filed the next month in March 2021. *See generally* Mot. COVID-19 remains counsel's primary explanation for any delay in bringing the claims against Altamont (Reply iso Mot. ¶ 8) and the reason that good cause exists for allowing modification. *Id*. at 9.

The Court concludes that Plaintiffs were not diligent in seeking to add Altamont as a new defendant. Altamont allegedly made the misrepresentations to Plaintiffs in February 2018. Am. Compl. ¶ 9. Plaintiffs purchased the Insurance Policy on or about February 27, 2018. The fire occurred on February 5, 2019. Amguard discontinued making insurance payments to Plaintiffs on June 4, 2019. Nearly two years later, Plaintiffs filed the instant motion to add Altamont as a party. It is unclear why it took two years after the last insurance payment for Plaintiffs to realize they may have a claim against Altamont. Plaintiffs' counsel asserts that he did not learn about Altamont's representation to his clients until "sometime in 2020" and after further investigation and analysis, in February 2021, concluded they might have claims against Altamont. Decl. iso Mot. ¶ 9. But there is no explanation as to why counsel was unaware of Altamont's representations until "sometime in 2020." The face of the insurance policy clearly identifies Altamont as the insurance broker (Dkt. No. 1-2 at 15), which should have led to an earlier inquiry regarding Plaintiffs' and Altamont's interaction. The Court recognizes that the pandemic caused unforeseen challenges to litigants, but Plaintiffs do not offer any reasonable explanation for their apparent delay in fully investigating and analyzing potential claims against Altamont between June 2019, when they received their last insurance payment, and March of 2020, when the pandemic reached the United States. The unexplained delay in bringing the instant motion weighs against granting Plaintiffs leave to amend and to join Altamont as a defendant. *Bakshi*, 2007 WL 1232049, at *2.

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE
FIRST AMENDED COMPLAINT; DENYING MOTION  FOR REMAND
12

Even if Plaintiffs had shown diligence, five of the six factors stated in *Bakshi* weigh against joinder. First, the Court agrees with Amguard that Altamont's representations to the Plaintiffs prior to purchase of the Insurance Policy is only tangentially related to the claims against Amguard. This action, at its core, is a dispute about the scope of coverage provided by the Amguard policy. The Court is not persuaded that a separate action against Altamont would be redundant because Plaintiffs' allegations against Altamont arise from different facts than those relevant in this case. Further, Altamont's presence in this suit is not necessary for Plaintiffs to obtain complete relief from Amguard.

Next, although the factual allegations against Altamont are thin, Plaintiffs do provide sufficient facts to suggest at least one potentially viable claim against Altamont on the theory that Altamont failed to name the landlords as additional insureds. The relevant statutes of limitations do not bar Plaintiffs from bringing such a claim against Altamont in state court. The four-year statute of limitations has not yet run on the breach of written contract claim (Cal. Civ. Proc. § 337), and Plaintiffs may be able to rely on the discovery rule for the negligence claim which starts the limitations period on the date that the Plaintiff discovered or should have discovered their injury. Cal. Civ. Proc. Code § 339(1); *CAMSI IV v. Hunter Technology Corp.*, 115 Cal.App.3d 1525, 1536 (1991) (outlining the discovery rule).

The two-year statute of limitations for breach of oral contract may have already run. Cal. Civ. Proc. Code § 339; however, the viability of such a claim is questionable. This is because Plaintiffs provide contradictory accounts of what Altamont allegedly represented to them regarding the length of the coverage period. In the proposed Amended Complaint, Plaintiffs allege that Altamont represented they would be covered "***at least*** a year," (Am. Compl. ¶ 9), whereas in the Reply brief, Plaintiffs contend that Altamont represented they would be covered "for ***up to (or at least)*** one year" (Reply iso Mot. at 2). Because the statutes of limitations do not preclude Plaintiffs from bringing potentially viable claims for breach of contract and negligence against Altamont in state court, the Court concludes that the second and fifth *Bakshi* factors weigh

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND
13

against granting joinder.

Third, as the Court discussed above, the Plaintiffs have not adequately explained their delay in bringing claims against Altamont. The third *Bakshi* factor weighs against granting joinder. Fourth, although the Court is skeptical of the Plaintiffs' choice to add Altamont nearly three years after the interaction that gives rise to these claims, there is no definitive evidence that Plaintiffs are acting with the sole intention of destroying diversity by filing this motion. This fourth *Bakshi* factor weighs in favor of joinder.

Sixth, Plaintiffs would not be unduly prejudiced by denial of joinder because, as stated previously, they may pursue separate claims against Altamont in state court, and Altamont's presence in this lawsuit it not necessary for Plaintiffs to receive complete relief from Amguard.

Because five of the six *Bakshi* factors weigh against granting joinder, the Court DENIES Plaintiffs' motion to add Altamont as a defendant in this suit.

### C. Remand of Proceedings to State Court is Unnecessary.

Because the Court has denied Plaintiffs' motion to join Altamont, diversity is not destroyed, and this Court maintains subject matter jurisdiction over this case. Accordingly, the motion to remand is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1) Plaintiffs are **GRANTED** leave to file a First Amended Complaint to assert additional allegations against Amguard only;
2) Plaintiffs' motion is **DENIED** as to Altamont; and
3) Plaintiffs' Motion for Remand to State Court is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 27, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-00210-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE FIRST AMENDED COMPLAINT; DENYING MOTION FOR REMAND

14